IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - -X
UNITED STATES OF AMERICA,  :
                          :
     Plaintiff,           :
                          :
vs.                       :        Case No. 4:18-cr-00057
                          :
STEVEN DOUGLAS CROOK, JR., :        <u>PLEA HEARING TRANSCRIPT</u>
                          :
     Defendant.           :
- - - - - - - - - - - - -X

                              Courtroom, First Floor
                              U.S. Courthouse
                              123 East Walnut Street
                              Des Moines, Iowa
                              Tuesday, December 18, 2018
                              1:04 p.m.


BEFORE:  THE HONORABLE STEPHANIE M. ROSE, Judge.


APPEARANCES:

For the Plaintiff:        MARC L. KRICKBAUM, ESQ.
                          VIRGINIA M. BRUNER, ESQ.
                          United States Attorney's Office
                          U.S. Courthouse Annex
                          110 East Court Avenue, Suite 286
                          Des Moines, Iowa  50309


For the Defendant:        JAMES F. WHALEN, ESQ.
                          ANDREW J. GRAEVE, ESQ.
                          Federal Public Defender's Office
                          Capital Square, Suite 340
                          400 Locust Street
                          Des Moines, Iowa  50309


             KELLI M. MULCAHY, CSR, RDR, CRR
                  United States Courthouse
             123 East Walnut Street, Room 115
                  Des Moines, Iowa 50309

2

1       P R O C E E D I N G S

2           (In open court, with the defendant present.)

3           THE COURT:  Thank you.  You can be seated.

4       We are here in the matter of United States vs. Steven

5   Douglas Crook.  It's Case No. 4:18-cr-57.  The defendant is

6   personally present and is represented by his attorneys, James

7   Whalen and Andrew Graeve.  The Government is represented by

8   Assistant United States Attorney Virginia Bruner and United

9   States Attorney Marc Krickbaum.

10      On November 27th of 2018, the grand jury returned a third

11  superseding indictment that charged you, Mr. Crook, in Counts 1,

12  15, 21, and 23 with sexual exploitation of a child.  I have been

13  advised that you wish to plead guilty to those particular

14  charges.  Is that right?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Okay.  Then before I can take your plea, I

17  have to ask you a whole bunch of questions in order to make sure

18  you understand the rights you're giving up and the potential

19  penalties that you face.  In order to answer those questions,

20  you have to be under oath, so at this time I'm going to have you

21  stand and raise your right hand.

22          THE DEPUTY CLERK:  Please raise your right hand.

23          STEVEN DOUGLAS CROOK, JR., DEFENDANT, SWORN

24          THE DEPUTY CLERK:  Thank you.

25          THE COURT:  Mr. Crook, because you have taken an oath

1    to testify truthfully, if you lied or if you made a false

2    statement when I asked you a question, you could be charged with

3    new crimes.  I don't have any reason to believe you're going to

4    do that, but I have to warn everybody who takes that oath.

5        Do you understand?

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  Okay.  Then it's not my intention to ask

8    you any kind of trick questions.  If I ask you anything at all

9    that you need to talk with Mr. Whalen or Mr. Graeve about before

10    you answer, take all the time you need to talk to them before

11    you answer me, okay?

12            THE DEFENDANT:  Okay.

13            THE COURT:  Can you give me your full name?

14            THE DEFENDANT:  Steven Douglas Crook, Jr.

15            THE COURT:  How old are you, sir?

16            THE DEFENDANT:  Twenty-eight.

17            THE COURT:  How far did you go in school?

18            THE DEFENDANT:  Eleventh grade.

19            THE COURT:  Are you able to read?

20            THE DEFENDANT:  I have trouble reading.

21            THE COURT:  Okay.  And in this case, you have a plea

22    agreement.  Did they help read it to you, your lawyers?

23            THE DEFENDANT:  Yes, ma'am.  They read it to me.

24            THE COURT:  Okay.  If you're somebody who's used drugs

25    or alcohol in your past, is there anything about the fact that

4

1  you used those things before that's still hurting you today?  In

2  other words, did you party so hard at some point in your life

3  that you're still affected by it today?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Can you tell me about that?

6          THE DEFENDANT:  Methamphetamines.

7          THE COURT:  Okay.  And tell me what you mean by still

8  affected today.

9          THE DEFENDANT:  Like hearing voices and stuff.

10          THE COURT:  Okay.  And is this the issue that they've

11  given you medication for over at the jail?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Do you remember what medication you take

14  for that?

15          THE DEFENDANT:  No, ma'am.

16          THE COURT:  Do you remember how long you've been

17  taking that medication?

18          THE DEFENDANT:  No, ma'am.  I don't know how long I've

19  been taking it.

20          THE COURT:  Did you start it after you got back from

21  your BOP evaluation?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Were you on it while you were at the BOP

24  evaluation?

25          THE DEFENDANT:  Yes, ma'am.

1    THE COURT:  Okay.  So you were with Dr. Shelton from

2  May to July of 2018 so you would have started taking the

3  medicine sometime in there?

4    THE DEFENDANT:  Yes, ma'am.

5    THE COURT:  Does it help you?

6    THE DEFENDANT:  Yes, ma'am.

7    THE COURT:  Okay.  Good.

8    Anything else that's going on that we -- with your past

9  drug or alcohol use?

10    THE DEFENDANT:  No, ma'am.

11    THE COURT:  Okay.  In the past week itself, have you

12  had any kind of alcohol or drugs?

13    THE DEFENDANT:  No, ma'am.

14    THE COURT:  Other than the prescription medication you

15  take for the issues associated with hearing voices, do you take

16  any other medicines over there at the jail?

17    THE DEFENDANT:  No, ma'am.

18    THE COURT:  And do you take that medicine to help you

19  with the voices the way they tell you to take it?

20    THE DEFENDANT:  Yes, ma'am.

21    THE COURT:  And do they give it to you and make sure

22  you take it?

23    THE DEFENDANT:  Yes, ma'am.

24    THE COURT:  Okay.  Then I want to talk a little bit

25  about the competency issues in this case.  Concerns were raised

6

1  originally about the defendant's competency, and in response he

2  was evaluated by the Bureau of Prisons between May 3rd of 2018

3  and July 2nd of 2018.

4      That evaluation was conducted by BOP Forensic Psychologist

5  Samantha Shelton, S-h-e-l-t-o-n, who found Defendant competent

6  and further found that the defendant was malingering or

7  exaggerating or feigning some of his, some of his mental illness

8  symptoms.

9      We held an evidentiary hearing on August 31st of 2018

10  regarding the defendant's competency, and after that I found

11  Defendant was competent.

12     Mr. Whalen, would you like to add anything to the record

13  regarding your own investigation into the defendant's

14  competency?

15         MR. WHALEN:  Yes, Your Honor.

16     We have conducted our own investigation into Mr. Crook's

17  competency and have elected not to further contest the

18  competency issue.

19         THE COURT:  Thank you, Mr. Whalen.

20     And as part of this record, I am going to make as a Court

21  exhibit, which will be sealed and will remain in camera, a copy

22  of an unredacted expert report that was prepared by Dr. Luis

23  Rosell --  is that how his last name is pronounced?

24         MR. WHALEN:  Yes, Your Honor.

25         THE COURT:  -- who is a licensed psychologist and who

1  had an opportunity to meet with the defendant on different

2  issues that were being examined on April 4th of 2018 and

3  September 27th of 2018.

4      So that report will be held in the event that any future

5  court hearings are necessary regarding Defendant's competency or

6  in the event any appellate court needs to look into that issue.

7  But that will not be made public, nor will it be made available

8  in its unredacted form to the Government.

9      Any additional record regarding competency that the

10 Government would like to make?

11          MR. KRICKBAUM:  No, Your Honor.

12          THE COURT:  Any additional record regarding competency

13 the defendant would like to make?

14          MR. WHALEN:  No, Your Honor.

15          THE COURT:  Mr. Whalen, do you have any concerns

16 regarding Defendant's competency on today's date as far as the

17 defendant being capable of changing his plea?

18          MR. WHALEN:  No, I do not, Your Honor.

19          THE COURT:  Okay.  Then, Mr. Crook, I want to talk to

20 you about the different kinds of rights you have.  You have one

21 right that stays with you no matter what your choice is, and

22 that's your right to have lawyers help you with your case for

23 free.

24      Mr. Whalen and Mr. Graeve, and before them Mr. Ross-Boon,

25 have helped on your case, and they're all part of the Federal

1  Public Defender's Office.  And if you get to the end of the

2  hearing today and you decide you want a trial, you don't want to

3  plead, they'll keep helping you, and it will never cost you

4  anything.

5       And if you are convicted or if you plead guilty today,

6  they'll help you at your sentencing, and if you don't like your

7  sentence and you decide to appeal, they'd help -- their office

8  would take care of your appeal as well.

9       Do you understand that?

10            THE DEFENDANT:  Kind of.

11            THE COURT:  Okay.  Tell me what parts are confusing,

12  and I can explain those more.

13            THE DEFENDANT:  Like the sentencing.  What is --

14            THE COURT:  What is that?

15            THE DEFENDANT:  Well, I know what it is.  Like how

16  would my lawyers help me with that?

17            THE COURT:  Oh, well, they'll go over something called

18  a presentence report that we'll talk more about in a minute.

19            THE DEFENDANT:  Okay.

20            THE COURT:  They'll come in and argue for what they

21  think a fair sentence for you is.  As you know, the Government

22  is asking for a very long sentence for you in this case.  Your

23  lawyers will probably ask for a much shorter sentence, and

24  they'll present to me, I would guess, evidence about why they

25  think a shorter sentence is better.  Usually that's things like

1  mental health records, or it might be, in your case, disability

2  records.  They might present to me evidence about your childhood

3  or your family life.

4      Sometimes they just argue that, you know, 120 years isn't

5  necessary for a sentence in your case.  The Government will also

6  bring in their evidence, and they'll argue about why 120 years

7  is the right sentence for you.

8      Did I say months earlier?  No.  120 years.

9      And so we'll have a hearing, and everybody will get to make

10 arguments and present evidence, and you'll get a chance to say

11 something to me, and then I'll make a decision about what I

12 think a fair and reasonable sentence is.  So they'll help you

13 through that whole process.

14     Does that make sense?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Okay.  Have you been happy with them as

17 your lawyers so far?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  And were you happy with Mr. Ross-Boon as

20 well?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  Okay.  Then I want to talk to you now

23 about the rights that are part of a jury trial.  And these are

24 the rights that if you plead guilty, you give up, okay?

25     So if we had a jury trial for you, we would meet in this

1  room, and you and your lawyers and the Government lawyers would

2  pick 12 people to sit here in this box right here, in these

3  chairs, and they would listen to all the evidence in the case.

4      So they would listen to the witnesses who said they had

5  information about you testify.  They would probably have to

6  watch some of the videos or look at the pictures.  They would

7  hear evidence of different types.  They might look at Internet

8  records or phone records or things like that that the Government

9  says links you to this case.

10     And at the end of the trial, they would decide, those 12

11 people would decide, whether the Government proved you were

12 guilty of this charge -- these charges, these four, we're just

13 talking about those right now, that have been brought against

14 you.

15     All 12 of them would have to agree that the Government

16 proved beyond a reasonable doubt that you committed these four

17 counts that are part of your plea agreement or all 12 of them

18 would have to agree the Government didn't prove that and did not

19 prove beyond a reasonable doubt you committed this offense, and

20 the trial wouldn't be over until all 12 of them agreed one way

21 or the other.

22     That trial would happen in a public courtroom, meaning that

23 your friends or family or anyone from the public that was

24 interested could come in and watch parts of that hearing or that

25 trial.

1        Do you generally understand those parts of trial?

2             THE DEFENDANT:  I think so.

3             THE COURT:  Okay.  Do you have any questions about

4    that part?

5             THE DEFENDANT:  No, ma'am.

6             THE COURT:  Okay.  So the next thing about a jury

7    trial is that you're entitled to something called a presumption

8    of innocence.  And that just means that in our country, we

9    assume that somebody who's been charged with a crime is

10   innocent.  In other countries, they assume the person is guilty

11   and then they make them prove that they didn't commit the crime.

12   In our country, we make the Government prove they did commit the

13   crime.

14        So I would tell the jury you're presumed to be innocent of

15   this charge, and I would tell them that the only way to overcome

16   that presumption is if the Government proves beyond a reasonable

17   doubt each element of these charges against you.

18        And an element is like part of a recipe.  There's four

19   things the Government has to prove to prove you're guilty of

20   each one of those counts.  So if they didn't prove one of those

21   four things, then the jury would find that you weren't guilty on

22   that particular count.

23        So that presumption would apply to you.  Do you understand

24   that?

25             THE DEFENDANT:  Yes, ma'am.

1            THE COURT:   Okay.  So the next part of a jury trial is

2    your right of confrontation.  And what that means is that you

3    have a right to see and hear the Government's evidence against

4    you.  So you have a right to hear the witnesses testify about

5    what they say they know, what they heard or saw or did.  You

6    have a right to have your lawyer ask those witnesses questions.

7        Hold on just a minute.

8        Do you guys need to take a break?

9            THE DEPUTY MARSHAL:  No, Your Honor.

10           THE COURT:   Okay.  Just wanted to make sure there

11   wasn't an emergency you needed to get to.

12       So you have a right for your lawyers to ask questions of

13   those witnesses, and you would have a right to see the documents

14   or the records or the other things that the Government says

15   proves its case.

16       Does that make sense?

17           THE DEFENDANT:  Yes, ma'am.

18           THE COURT:   Okay.  During that same trial, you would

19   have something called a right to present a defense.  And that

20   just means you have a right to tell your side of the story to

21   the same group of people sitting in the box, the jurors.  So you

22   could bring in your own witnesses or your own documents or your

23   own papers or whatever it is that you have that helps you with

24   your case.

25       And if you brought witnesses here to court to testify, then

1   the Government lawyers could ask them some questions.  And if

2   they did not want to come to court, I could order them to be

3   here and help pay the costs to get them here.

4        Do you understand that?

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  The next right that you have is something

7   called the right to remain silent.  And that means that you

8   could sit through your entire trial and never say a single word.

9   You could just sit there through the whole thing, and I would

10  tell the jury that they couldn't hold that against you in any

11  way.  In fact, I'd tell them they couldn't even talk about it

12  when they went back to the jury room to deliberate.

13       Do you understand that?

14           THE DEFENDANT:  Yes, ma'am.

15           THE COURT:  But if you wanted to, you could take the

16  stand, and that would be right here next to me on the right, and

17  you could take an oath like you did today to tell the truth, and

18  then you could tell the jury your side of the story if you

19  wanted to.  And if you did that, the Government lawyers would

20  get a chance to ask you questions.

21       Do you understand that?

22           THE DEFENDANT:  Yes, ma'am.

23           THE COURT:  Now, if you plead guilty here today, you

24  won't have a jury.  Do you understand that?

25           THE DEFENDANT:  Yes, ma'am.

1           THE COURT:  So there won't be a trial where 12 people

2   decide your case.  Do you understand that?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  You give up all those things we just

5   talked about except your right to have a lawyer.  You get a

6   lawyer no matter what happens, but you won't have all these

7   other things we just talked about because you basically convict

8   yourself.  It's like you were your own jury.

9       Do you understand that?

10          THE DEFENDANT:  No.

11          THE COURT:  Okay.  You don't understand that there

12  won't be a jury that decides your case?

13          THE DEFENDANT:  Yeah.  I didn't understand that part.

14          THE COURT:  Okay.  So all the rights we just talked

15  about, right, the jury and the hearing the evidence and the

16  witnesses and things, that only happens if somebody hasn't pled

17  guilty.

18          THE DEFENDANT:  Oh, okay.

19          THE COURT:  If somebody pleads guilty, then we don't

20  need to do that because they've already said that they're guilty

21  of that offense.  Does that make sense?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  So if you plead guilty here today, we

24  won't have that jury sit through all those things.  Do you

25  understand?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Okay.  Do you have any questions about the

3    things we just talked about?

4          THE DEFENDANT:  No, ma'am.

5          THE COURT:  Okay.  Then let's talk about what the

6    Government would have to prove to a jury if you decided you did

7    not want to plead guilty here today.  The Government would have

8    to prove four things.

9          First, they'd have to prove that at the time that is

10   alleged here in your indictment, your victim, and in this case

11   we're talking, as I understand it, about your daughter, was

12   under the age of 18.

13         Second, they would have to prove that you on purpose, or

14   you knowingly, persuaded, induced, enticed, or coerced your

15   daughter, your 6-year-old daughter -- she was younger than that

16   at some points, but that's the person we're talking about.  So

17   they call her Victim 1.  You knowingly persuaded, induced,

18   enticed, or coerced Victim No. 1 to engage in sexually explicit

19   conduct.

20         And third, they have to show that you did that for the

21   purpose of producing a visual image of the conduct, the sex

22   conduct.  In other words, you did that so you could take a

23   picture or you could make a video or you could do a live visual

24   transmission of that activity from such contact.

25         And then it says the fourth thing they'd have to prove is

1    that that visual depiction, so that photo or that recording or

2    that livestream video, was produced using materials that had

3    been shipped or mailed or transported across a state line or in

4    foreign commerce by any means, including by computer or cell

5    phone; or the visual depiction was actually transported or

6    transmitted using any means or facility of interstate or foreign

7    commerce or in or affecting interstate or foreign commerce.  And

8    that basically means you used a cell phone or you used the

9    Internet.

10        Do those four elements make sense to you?

11            THE DEFENDANT:  Yes, ma'am.

12            THE COURT:  Then here you have a plea agreement; is

13    that right?

14            THE DEFENDANT:  Yes, ma'am.

15            THE COURT:  Do you have a copy in front of you?

16            THE DEFENDANT:  Yes, ma'am, I do.

17            THE COURT:  On page 16 of that plea agreement, is that

18    your signature?

19            THE DEFENDANT:  Yes, ma'am.

20            THE COURT:  Did you go over every single paragraph of

21    this plea agreement with your lawyers before you signed it?

22            THE DEFENDANT:  Yes, ma'am, I did.

23            THE COURT:  Did they read each paragraph to you?

24            THE DEFENDANT:  Yes, ma'am.

25            THE COURT:  Did they explain each paragraph to you?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Did they answer any questions you might

3    have had about those paragraphs?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Do you have any questions about your plea

6    agreement?

7          THE DEFENDANT:  No, ma'am.  Not at this time.

8          THE COURT:  Okay.  You feel like you understand it?

9          THE DEFENDANT:  I think so, yes, ma'am.

10          THE COURT:  Okay.  Then I want to talk to you about

11    the facts that you and the Government have stipulated to, and

12    those start at the very bottom of page 3, and it's paragraph 8,

13    and it has a bunch of subparagraphs that are labeled with the

14    alphabet, so (a), (b), (c), like that, all the way through (o).

15    And so it starts at the bottom of 3 and it ends at the bottom of

16    page 6.

17        Do you see those pages?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  Did your lawyers read each and every one

20    of those paragraphs to you?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  Did they make sure that each and every one

23    of those paragraphs was true?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  And did you agree with them that every one

1  of those paragraphs was true before you signed it?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Is there anything that they read to you

4  from those paragraphs that wasn't true or that was wrong?

5          THE DEFENDANT:  No, ma'am.

6          THE COURT:  Mr. Krickbaum, would you like me to go

7  through those paragraphs with the defendant or are you satisfied

8  that we have a factual basis?

9          MR. KRICKBAUM:  I'm satisfied, Your Honor.

10          THE COURT:  Okay.  And do you believe I have

11  accurately outlined the elements of the offense as well?

12          MR. KRICKBAUM:  Yes, Your Honor.

13          THE COURT:  Mr. Whalen, do you think I have accurately

14  outlined the elements of the offense?

15          MR. WHALEN:  Yes, Your Honor.

16          THE COURT:  And do you believe we have an adequate

17  factual basis?

18          MR. WHALEN:  Yes, I do, Your Honor.

19          THE COURT:  Would you like to make any additional

20  record with regard to how the plea agreement was presented to

21  the defendant?

22          MR. WHALEN:  I would simply state that Mr. Graeve and

23  I both met with the defendant on -- the date the plea agreement

24  was signed was not the day that both Mr. Graeve and I met with

25  the defendant.  I think we met with him actually the 12th or

1  13th.  It would have been last Thursday.  And we read the entire

2  agreement to him verbatim, pausing whenever he had questions

3  about the contents of the plea agreement and answering those

4  questions.

5      Following his signing of the plea agreement, we had a

6  further meeting with Mr. Krickbaum and, among other things,

7  discussed some changes to paragraph 3 of the plea agreement.

8  Those changes were made.

9      The following day, Mr. Graeve, by himself, went over and

10  visited with Mr. Crook and explained the changes to him,

11  answered any questions that he had about those, and Mr. Crook

12  re-signed the plea agreement.  It was necessary to re-sign the

13  whole agreement because the changes in paragraph 3 changed the

14  pagination from the original.

15          THE COURT:  Okay.  Mr. Crook, did you hear what

16  Mr. Whalen just said?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Was all of that true?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Okay.  Mr. Whalen, did you and your office

21  also have access to the discovery materials?

22          MR. WHALEN:  Yes, we did, Your Honor.

23          THE COURT:  Do they seem to support a factual basis as

24  well?

25          MR. WHALEN:  They do, Your Honor.

1          THE COURT:  Can you think of any possible defense or

2    anything else that may help Mr. Crook that you hadn't already

3    talked with him about before court today?

4          MR. WHALEN:  No, Your Honor.

5          THE COURT:  Okay.  Thank you, Mr. Whalen.

6       Then, Mr. Crook, I want to talk to you about the potential

7    penalties that you face in this case.  Each one of the counts

8    you're pleading guilty to, so Counts 1, 15, 21, and 23, are each

9    punishable by at least 15 years in prison and up to 30 years in

10   prison.  And those particular counts can either run at the same

11   time, which means you could be sentenced to as little as 15

12   years if all four of them ran at the same time, or they can be

13   stacked one on top of each other, so at the most you'd be

14   looking at 30 plus 30 plus 30 plus 30, and that's 120 months.

15      And the Government says in its plea agreement, your plea

16   agreement --

17          MR. WHALEN:  Excuse me, Your Honor.  I think you said

18   120 months.

19          THE COURT:  I'm sorry.  120 years.  So that's what the

20   Government says -- thank you, Mr. Whalen -- that they're going

21   to ask for your in your case is 120 years.  And your lawyers can

22   ask for whatever they think is reasonable, as little as 15.  But

23   under any scenario, you'll have to do 15 years, and you could do

24   up to 120 years.

25      Do you understand that?

1        THE DEFENDANT:  Yes, ma'am.

2        THE COURT:  If you're not imprisoned for, effectively,

3   the rest of your life, you'll be on something called supervised

4   release for at least five years, and you could be on supervised

5   release for up to the rest of your life.

6        Supervised release is a period of time after you get out of

7   prison when the probation office is still keeping track of you,

8   and there would be certain rules you'd have to follow, and if

9   you didn't follow those rules, you could have your supervised

10  release revoked, and you could be sent back to prison for even

11  more time.

12       And there are certain things that can happen when you're on

13  supervised release for these kinds of offenses that could

14  require you to go back to prison for at least five years.  So

15  somebody with this kind of conviction, if they get out of prison

16  and they get caught with child pornography again, they have to

17  go to prison for at least five more years.  If they get caught

18  abusing a child sexually, they have to go back to prison for at

19  least five more years.  And that's on top of any new charges

20  that might be brought against them for that new criminal

21  activity.

22       Do you understand that?

23       THE DEFENDANT:  Yes, ma'am.

24       THE COURT:  If you had this kind of money, you could

25  be required to pay a fine of up to $250,000 on each of those

1  four counts.  So if you were quite wealthy, you could pay a fine

2  of a million dollars, if I added those all together.

3       Do you understand?

4            THE DEFENDANT:  Yes, ma'am.

5            THE COURT:  And you'll have to pay a $100 special

6  assessment on each count, so that's a total of $400.  And that's

7  true even if you don't have money.  Everybody has to pay that.

8       Do you understand?

9            THE DEFENDANT:  Yes, ma'am.

10            THE COURT:  You've also agreed in paragraph 18 of your

11  plea agreement to give up all of the computer equipment and

12  phones and other things that were used to either look at child

13  pornography or search for child pornography or make child

14  pornography in your case, at least all of the things the

15  Government has taken, okay?

16       Do you understand you're not getting any of those items

17  back?

18            THE DEFENDANT:  Yes, ma'am.

19            THE COURT:  You could also be required to pay

20  something called restitution, and that means that if any

21  identified victim, somebody who your crime hurt, came forward

22  and asked for money to pay for medical treatment or for maybe

23  counseling or some other form of cost that came as a result of

24  your actions, they could be entitled to that money.  And that's

25  paragraph 23 of your plea agreement.

1       Now, in this case, I know there's at least the one

2    identified victim, which is your daughter.

3       There also was some what I would call more routine child

4    pornography involved as well, correct?  Have any of those series

5    been identified?

6              MR. KRICKBAUM:  Yes.  We will -- I do anticipate we

7    will have additional victims.  I don't know the number right

8    now, Your Honor.

9              THE COURT:  Okay.  So if any of those children, the

10   ones who you may have found when you were searching on the

11   Internet, ask for money, you could have to pay them money too.

12      Now, usually in cases involving the children who were found

13   on the Internet, restitution is a relatively small amount

14   because so many people around the world are looking at those

15   same kids, unfortunately.  And so the judges in all of those

16   cases have to decide how much of that restitution each defendant

17   all across the country owes.

18      And a lot of these victims don't even ask for money.  They

19   don't want it.  Either they've collected enough over the years

20   or they just don't want to be -- they don't want to know how

21   much is going on out there.

22      But in the case of what I'll call your live victim, she is

23   probably going to need counseling for many, many years, and that

24   may be something you're asked to pay for.  Do you understand

25   that?

1              THE DEFENDANT:  Yes, ma'am.

2              THE COURT:  And until I've seen any requests that come

3    in, if she does ask for money, I don't know how much that could

4    be.  It could be a small amount or it could be a big amount.

5         Do you understand?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  Mr. Krickbaum, has the victim or their

8    appropriate guardian here been notified of today's hearing?

9              MR. KRICKBAUM:  Yes, Your Honor.

10             THE COURT:  Were they notified of the terms of the

11   agreement?

12             MR. KRICKBAUM:  We have not spoken to the victim about

13   the terms, in part because she has had difficulty acknowledging

14   the facts of what occurred.

15             THE COURT:  Okay.

16             MR. KRICKBAUM:  Her foster mother, I believe, is

17   generally aware.  I think I can say with very great confidence,

18   because our victim specialist from both the FBI and from our

19   office are in close contact with the family, I don't think

20   there's any question that this plea agreement is in the

21   interests of the victim and the family here.

22             THE COURT:  I would agree with that as well.

23        Mr. Crook, you had asked about sentencing, and so I want to

24   talk to you a little bit more about something called a

25   Presentence Investigation Report.  Once somebody pleads guilty

1    or if they don't plead guilty and they go to a trial and the

2    jury finds them guilty, the probation office prepares something

3    called a Presentence Investigation Report, and that's basically

4    a giant research report about that person.

5         So it will talk about, for you, where you were born, who

6    your parents might be, who your brothers and sisters might be.

7    It will talk about all the places you've lived, what kind of

8    childhood you had.  It will talk about your mental health issues

9    and any substance abuse problems you've had.  It will talk about

10   any physical health problems, if you have back pain or any other

11   kind of problem like that.

12        And it will talk about the facts of this particular case.

13   It will also talk about any prior criminal trouble that you've

14   had.  So if you've had other convictions or other run-ins with

15   the criminal justice system, it will talk about those.

16        You'll have a chance to see that, you and your lawyers,

17   before I see it, when it's still a draft, and so you can make

18   corrections to it if it's not accurate or if it's not complete.

19   And after it's all finalized, that's what I'll use to help me

20   figure out what the right sentence in your case should be.

21        Part of that presentence report is something called a

22   sentencing guideline calculation.  And this is a very

23   complicated formula, but it's basically just a big math problem.

24   Every federal crime is given a number.  That number gets higher

25   if certain things happen, it gets lower if certain things

26

1  happen.  The higher the number, the more sentence, the longer

2  the sentence that's recommend.  The lower the number, obviously,

3  the shorter the sentence that's recommended.

4      In cases like this, it's usually based on the number of

5  images of child pornography, how old the kids are in the

6  pictures, what's happening to the kids in the pictures.  If

7  there's a relationship between the person who made the child

8  pornography and the child, it will talk about things like that.

9      Whatever ultimately that math formula recommends, I'm not

10 bound by that.  What I mean by that is I can look at it and

11 decide I agree with it or I can look at it and decide I don't

12 agree with it.  And, again, I can sentence you anywhere between

13 15 years all the way up to 120 years, depending on what I think

14 is fair and reasonable.

15     Do you understand that?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  Okay.  If you do end up in prison, there

18 is no parole in the federal system.  So if you get a sentence of

19 somewhere in the middle here, 60 years, you won't get a chance

20 to go to a parole board after five or ten years and say, "I've

21 learned my lesson, and I'm ready to get out."  There just is no

22 such thing as parole in the federal system.

23     Do you understand?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  You can earn some time off of your

1  sentence for something called good time.  And that means that if

2  you behave well when you're in prison, they'll shorten your

3  sentence a little bit.  But it's not a lot.  It's about 15

4  percent, or one-five percent.  So for every 10 years that

5  somebody has to go to prison, even if they're perfect, they're

6  going to have to do at least 8 1/2 out of every 10 years.

7       Do you understand that?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  This is -- or these are felony

10  convictions, and so you won't ever be able to vote or serve on a

11  jury or hold public office or possess firearms and ammunition.

12       Do you understand that?

13            THE DEFENDANT:  Yes, ma'am.

14            THE COURT:  You'll also be required to register as a

15  sex offender with the national registry of sex offenders,

16  probably for the rest of your life.  Do you understand that?

17            THE DEFENDANT:  Yes, ma'am.

18            THE COURT:  If you decide to plead guilty here today

19  and you change your mind after you leave, you can't take it

20  back.  Do you understand?

21            THE DEFENDANT:  Yes, ma'am.

22            THE COURT:  Then I want to talk to you about your

23  rights to appeal.  You have given up certain rights to appeal

24  and you have kept other rights to appeal.  And this is paragraph

25  29.  It's on page 14.

1     You have kept your right to appeal any sentence I give you.

2  So that means that if I sentence you and you think the sentence

3  I give you is too long or you don't like one of the conditions

4  of supervision I give you or I make some other mistake, you can

5  take that up to the court that supervises me, they're called the

6  Eighth Circuit, and they'll decide if I made a mistake.  And if

7  I did, they'll send it back so I can fix it for you.

8     Now, the Government has the same right.  So if I give you a

9  sentence that they think is too low or if they think I made some

10  other kind of mistake, they can take it up with the Eighth

11  Circuit too.  And the same thing; if the Eighth Circuit thinks I

12  made a mistake, they'll send it back so I can fix it for them.

13     Now, other than that, you've given up your right to

14  complain about things that have happened to you so far that you

15  know about, okay?  So I know you had a motion to suppress that

16  had been filed.  You're giving up your right to pursue that.

17  You're giving up your right to complain about how you were

18  investigated, how you've been charged, how you've been treated

19  so far, the fact that I found you were competent.

20     All of those kinds of things that have happened in your

21  case until today, you're giving up your right to appeal, other

22  than your sentence that's coming down the road.  Do you

23  understand that?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Mr. Whalen, do you want to make any

```
1  additional record regarding the appeal waiver?

2         MR. WHALEN:  No, Your Honor.

3         THE COURT:  Okay.  Mr. Krickbaum, any additional

4  waiver?

5         MR. KRICKBAUM:  No, Your Honor.

6         THE COURT:  Okay.  Then there are a couple other

7  paragraphs that are a little unusual in this plea agreement.  Do

8  you want me to go over like the limits of this plea agreement as

9  far as other jurisdictions or any of those kinds of things or

10 are the parties comfortable with the record that we've made so

11 far?

12        MR. KRICKBAUM:  Government is comfortable with the

13 record the Court made.

14        MR. WHALEN:  We're fine with the record so far, Your

15 Honor.

16        THE COURT:  Okay.  Then, Mr. Crook, I want to talk to

17 you about one last thing.  Has anyone forced you or pressured

18 you to try and get you to plead guilty?

19        THE DEFENDANT:  No, ma'am.  Not that I know of.

20        THE COURT:  Okay.  Has anyone made any threats against

21 you or made you any promises that you'd get a particular

22 sentence if you pled guilty?

23        THE DEFENDANT:  Not that I know of.

24        THE COURT:  Okay.  Do you still want to plead guilty

25 here today?
```

30

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Do you have any questions about what we've

3    talked about?

4          THE DEFENDANT:  No, ma'am.

5          THE COURT:  Mr. Whalen, can you think of anything I've

6    omitted to ask that might affect the validity of the plea?

7          MR. WHALEN:  No, Your Honor.

8          THE COURT:  Mr. Krickbaum, can you think of anything I

9    have omitted to ask that might affect the validity of the plea?

10          MR. KRICKBAUM:  No, Your Honor.

11          THE COURT:  Okay.  Then, Mr. Crook, formally and for

12    the record, how do you plead to Count 1 of the indictment -- of

13    the third superseding indictment, which is sexual exploitation

14    of a child, guilty or not guilty?

15          THE DEFENDANT:  Guilty.

16          THE COURT:  And how do you plead to Count 15 of the

17    same indictment with the same charge, guilty or not guilty?

18          THE DEFENDANT:  Guilty.

19          THE COURT:  And Count 21 of the same indictment with

20    the same charge, guilty or not guilty?

21          THE DEFENDANT:  Guilty.

22          THE COURT:  And Count 23 of the same indictment with

23    the same charge, guilty or not guilty?

24          THE DEFENDANT:  Guilty.

25          THE COURT:  The record should reflect that the

1  defendant has pled guilty to Counts 1, 15, 21, and 23 of the

2  third superseding indictment.  I'm going to make some findings

3  about what we talked about here today.

4      I find that the defendant is competent, that he fully

5  understands the charge against him, that there's a factual basis

6  for his plea, that he knows the maximum punishment that could be

7  imposed, that he understands his jury rights and has voluntarily

8  waived those rights.

9      I further find the defendant's decision to plead guilty was

10  voluntary and knowing and not the result of any force or

11  pressure, threats or promises, other than promises made by the

12  Government in the plea agreement.

13      I therefore find and adjudge the defendant guilty on Counts

14  1, 15, 21, and 23.

15      I have scheduled a sentencing hearing for Wednesday, April

16  10th of 2019, at 10:30.  That's a date, obviously, that can

17  change if it's not good for the lawyers or the parties.

18      But, Mr. Crook, I wanted you to know roughly when your next

19  appearance would be here in court.  I don't want you to think

20  we've just forgotten about you.  It just takes the probation

21  office some time to gather all that information that they'll

22  need.  And it will help me to have that information to make the

23  best decision possible about your sentence.

24      Anything else, Mr. Krickbaum, on behalf of the United

25  States?

1          MR. KRICKBAUM:  Judge, just looking forward to the

2   sentencing hearing, question that might affect the Government's

3   advocacy at sentencing.  Has the Court watched the videos that

4   we submitted?

5          THE COURT:  I have not.

6          MR. KRICKBAUM:  Okay.  Thank you.

7          THE COURT:  Mr. Whalen?

8          MR. WHALEN:  Nothing further, Your Honor.

9          THE COURT:  Okay.  Mr. Crook, I wanted to thank you.

10  I don't know what changed your mind about pleading guilty, but

11  this would have been a very, very hard case for jurors to hear,

12  and it would have exposed those videos of your daughter to the

13  public more, and so I appreciate the decision you made, and I'm

14  grateful that you made the decision you made so that all the

15  people sitting in this room don't have to watch those videos

16  again or for the first time.  So I wanted you to know that.

17     Okay.  We are adjourned.

18          MR. KRICKBAUM:  Thank you, Your Honor.

19          (Proceedings concluded at 1:45 p.m.)

20

21

22

23

24

25

1                    C E R T I F I C A T E

2        I, Kelli M. Mulcahy, a Certified Shorthand Reporter of the

3    State of Iowa and Federal Official Realtime Court Reporter in

4    and for the United States District Court for the Southern

5    District of Iowa, do hereby certify, pursuant to Title 28,

6    United States Code, Section 753, that the foregoing is a true

7    and correct transcript of the stenographically reported

8    proceedings held in the above-entitled matter and that the

9    transcript page format is in conformance with the regulations of

10   the Judicial Conference of the United States.

11       Dated at Des Moines, Iowa, this 6th day of July, 2019.

12

13

14                      /s/ Kelli M. Mulcahy
                        Kelli M. Mulcahy, CSR, RDR, CRR
15                      Federal Official Court Reporter

16

17

18

19

20

21

22

23

24

25